# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-KA-01539-SCT

*CORA ANN TURNER*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/31/2007 |
| TRIAL JUDGE: | HON. FRANK G. VOLLOR |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ERIN E. PRIDGEN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LADONNA C. HOLLAND |
| DISTRICT ATTORNEY: | G. GILMORE MARTIN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 02/19/2009 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., DICKINSON AND LAMAR, JJ.**

**LAMAR, JUSTICE, FOR THE COURT:**

¶1.     Cora Ann Turner is before this Court appealing her conviction for the sale of cocaine. Turner argues that the trial court erred in admitting evidence, claiming the State failed to establish chain of custody.  Finding no error, we affirm the trial court.

**FACTS**

¶2.     On July 17, 2007, a jury found Turner guilty of selling and delivering cocaine to a

confidential informant, Joseph Anthony Kirkley.[1]  Kirkley, a recovering drug addict, was working with the Warren County Sheriff's Department as a confidential informant. On September 15, 2005, Mike Traxler, an investigator with the Warren County Sheriff's Department, instructed Kirkley to attempt to purchase narcotics from Turner and her brother, Joe Joe Turner.  Traxler and Kirkley met in Warren County at a pre-buy location.  Traxler searched Kirkley and his car for drugs prior to Kirkley leaving the pre-buy location.  However, Traxler testified that he did not search Kirkley's Marlboro cigarette box for drugs.

¶3.    Traxler testified that he gave Kirkley $170 for the purchase of narcotics, and he outfitted Kirkley with a button-hole camera that was also an audio-video recorder.  Traxler stated that Kirkley did not have the ability to stop or start the recording.  Traxler also testified that he was unable to monitor Kirkley's actions during the drug buy, and that he did not see Kirkley again until they met at the post-buy location.

¶4.    At the post-buy location, Kirkley gave Traxler the crack cocaine that he had purchased for $50, and returned $120, the remainder of the purchase money.  Kirkley had transported the cocaine in a Marlboro cigarette box, from which Traxler took the cocaine, returning the box to Kirkley.  Kirkley informed Traxler that he had purchased the cocaine from Turner.

¶5.    Traxler then placed the cocaine in a plastic bag and transported the evidence to the Sheriff's Office.  Traxler testified that he took the cocaine to the Mississippi Crime Lab and

---

[1]Turner was indicted and convicted under Section 41-29-139(a) of the Mississippi Code.

received an evidence submission form.[2]  The evidence submission form was entered as an exhibit, and it verifies that Mike Traxler delivered one heat-sealed plastic bag containing a rock-like substance to the lab on September 16, 2005, at 10:28 a.m.  Archie Nichols, a forensic scientist with the Mississippi Crime Laboratory, testified that he analyzed the evidence, which he found to be .3 grams of cocaine.  Nichols's test results were set forth in the Mississippi Crime Laboratory Certified Report.[3]

¶6.     At trial, the State introduced the video of the drug buy.  Kirkley's testimony was used to clarify conversations and explain events as they occurred on the videotape.  Kirkley confirmed that Traxler had given him $170 "to hit another dealer and Cora Ann and just whoever I could get that day."  Kirkley testified that he went to Joe Joe's house first, and then he drove to Turner's house, where he purchased two rocks of cocaine from Turner for $50.  Kirkley stated he put the cocaine in a cigarette box, but he could not remember if he placed the box in his console or in front of his console.  Kirkley testified that after he left Turner's house, he returned to Joe Joe's house to wait for another dealer.  Kirkley stated he left Joe Joe's home when the dealer failed to meet him, and he returned to the post-buy location.  Kirkley testified that he maintained control over the cocaine until he gave it to Traxler.

---

[2]The evidence submission form is generated by the lab, and it shows "who relinquished custody of the evidence or who transported it to the crime lab, date and time."

[3]Turner raises no questions concerning the chain of custody of the cocaine after Traxler received it from Kirkley.

¶7. The video contains about a minute of footage taken when Kirkley returned to Joe Joe's house for the second time; the tape then abruptly ends. Traxler explained that he first transferred the recording from the button-hole camera to a computer, and then he burned the recording onto a disc. On cross-examination, Traxler explained that he "burned the session that showed the buy onto a CD, and then everything else was discarded off [of the computer], and the recorder was erased and ready to go again." Traxler further testified that the remaining portion of the video "had nothing to do with the purchase of the narcotics from Cora Turner."

¶8. The defense also questioned Traxler about the portion of the video in which Kirkley interacted with Turner. When asked what Traxler saw on the video, he replied, "I saw Cora Turner standing there with her side to the informant, taking what appeared to be a white rock from her hand and handing it toward the informant . . . . The view of the camera is hard, and y'all will see that."

## DISCUSSION

**The sole issue raised by Turner is whether the Trial Court abused its discretion in allowing the cocaine and the Mississippi Crime Lab Report into evidence.**

¶9. This Court reviews the trial court's admissibility of evidence under the abuse-of-discretion standard. *Ellis v. State*, 934 So. 2d 1000, 1004 (Miss. 2006). Furthermore, this Court will affirm the trial court's ruling "'[u]nless we can safely say that the trial court abused its judicial discretion in allowing or disallowing evidence so as to prejudice a party

4

in a civil case, or the accused in a criminal case.'" **Id.** (quoting **Jones v. State**, 918 So. 2d 1220, 1223 (Miss. 2005)).

¶10.   Turner contends the State failed to prove that the cocaine that was tested at the Mississippi Crime Lab was the same drug purchased from her.  Therefore, Turner argues the trial court committed prejudicial error in allowing the State to admit into evidence the cocaine and Mississippi Crime Lab report.  Turner's argument is based on the following uncontested facts.  First, Turner asserts Traxler did not search the Marlboro cigarette box prior to Kirkley leaving the pre-buy location.  Second, Turner argues Kirkley did not immediately return to the post-buy location after he purchased the cocaine but went to the home of "a known drug dealer."  Third, Turner contends the Sheriff's Department failed to monitor or supervise Kirkley as the transaction occurred.  Finally, Turner asserts the State failed to produce the entire video, which would have accounted for Kirkley's activities after he left her house.  Turner argues that these facts create a reasonable inference the evidence was tampered with or substituted.

¶11.   While Turner frames her assignment of error as a break in the chain of custody, she clearly argues a question of identification which arises under Rule 901(a) of the Mississippi Rules of Evidence.  Pursuant to Rule 901(a), "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by *evidence sufficient to support a finding that the matter in question is what the proponent claims*."  Miss. R. Evid. 901(a) (emphasis added).  This Court has ruled that the "proponent of the evidence must show no reasonable inference of material tampering with, or substitution of, the evidence;

5

however, Mississippi law has never required a proponent of evidence to produce every handler of the evidence." *Ellis*, 934 So. 2d at 1005. Furthermore, to determine a break in the chain of custody there must be an "indication or reasonable inference of probable tampering with the evidence or substitution of the evidence." *Spann v. State*, 771 So. 2d 883, 894 (Miss. 2000); *cf. Ellis*, 934 So. 2d at 1005.

¶12.    This Court analyzed a similar claim by a defendant in *Butler v. State*, 592 So. 2d 983, 984 (Miss. 1991). In *Butler v. State*, this Court examined the application of Rule 901(a) to a chain-of-custody objection. *Id.* The defendant in *Butler* claimed the prosecution failed to prove that the cocaine offered at trial was the same cocaine that was purchased from him. *Id.* The defendant's claim was based upon the fact that a confidential informant had bought cocaine from various persons, including the defendant, in one day. *Id.*

¶13.    The Court in *Butler* examined the language of Rule 901 and found "Rule 901's phrase 'support a finding' imports the same notions of legal sufficiency trial courts confront when a convicted defendant moves for judgment of acquittal notwithstanding the verdict." *Id.* at 985. The Court explained the application of Rule 901(a) as follows:

> [Rule] 901(a) allow[s] receipt of the cocaine as evidence against [the defendant] if – and only if – all of the evidence, giving the prosecution the benefit of all favorable inferences that may reasonably be drawn therefrom, is such that reasonable and fair-minded jurors, having in mind the beyond-a-reasonable-doubt burden of proof standard, in the exercise of impartial judgment, may have reached different conclusions whether [the defendant] delivered it to [the confidential informant]. *The question is not whether the trial court finds beyond a reasonable doubt [the defendant] delivered the cocaine, but whether a jury may so find.* Only if the facts and inferences so considered point in favor of the accused with sufficient force that all reasonable men would have a reasonable doubt, should admission be denied.

6

*Id.* (emphasis added). The Court further stated "[w]e pretermit chain of custody objections in the face of . . . properly predicated, direct identification testimony." *Id.* at 985-86.

¶14. After reviewing the evidence, the Court in *Butler* found there were "holes" in the prosecution's case. *Id.* at 986. Namely, the Court found there was "uncertainty" as to whether the informant was searched prior to making the drug buy, and there was conflicting testimony as to which officer received the cocaine from the informant. *Id.* The informant, however, testified about the drug buy, and an officer testified about monitoring the sale via radio. *Id.* This Court ruled that any discrepancies in the evidence were "subjects of cross-examination and argument, but [did] not detract from the fact that there was otherwise evidence to satisfy the strictures of Rule 901(a)." *Id.* Therefore, this Court held the evidence was admissible and legally sufficient to support a finding that the defendant had sold cocaine to a confidential informant. *Id.*

¶15. Turning to the case at hand, we find the State put forth "evidence sufficient to support a finding" that Kirkley had purchased the cocaine from Turner. *See* Miss. R. Evid. 901(a). The trial court heard testimony from Traxler and Kirkley as to the events that occurred pre-buy through post-buy. Kirkley testified that he purchased cocaine from Turner, returned to Joe Joe's house, and then returned to the post-buy location, delivering the cocaine to Traxler. Traxler testified the video shows Turner handing a white substance to Kirkley and Kirkley returning to Joe Joe's house. Traxler and Kirkley testified that no further drug buys occurred at Joe Joe's house. Furthermore, their testimony was corroborated by the video played at trial. Clearly, the questions posed by Turner were appropriate and were the proper subject

7

of cross-examination and argument. It was for the jury to determine Kirkley's credibility, as the credibility of a witness is not for a reviewing court, but a question only for the jury. ***Doby v. State***, 532 So. 2d 584, 591 (Miss. 1988).

¶16. Further, Turner failed to put forth evidence of probable instead of possible tampering or substitution of evidence. *See **Ellis v. State***, 934 So. 2d 1000, 1005 (Miss. 2006). Turner indicates that cocaine could have *possibly* been stored in the cigarette box or purchased at Joe Joe Turner's home, but she failed to offer any proof in support of these mere suggestions. "A mere suggestion that substitution could possibly have occurred does not meet the burden of showing probable substitution." ***Id.*** at 1006. We find the trial court did not abuse its discretion in admitting the cocaine or the lab report.

## CONCLUSION

¶17. We find that the evidence was legally sufficient to support the jury's verdict, and we affirm the conviction and sentence of Cora Ann Turner. The State sufficiently established chain of custody, and therefore, properly introduced the cocaine and lab report into evidence. Furthermore, Turner failed to put forth any evidence of probable tampering or substitution of evidence. Therefore, the trial court did not abuse its discretion in admitting evidence of the cocaine.

¶18. **CONVICTION OF THE SALE OF COCAINE AND SENTENCE OF THIRTY (30) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.**

**WALLER, C.J., CARLSON, P.J., DICKINSON, RANDOLPH, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR. GRAVES, P.J., CONCURS IN RESULT ONLY.**

8